IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MICHELE MCCARTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-600 (RDA/IDD) |
| | ) | |
| CITY OF ALEXANDRIA, a municipal | ) | |
| Corporation of Virginia, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant City of Alexandria's Motion to Partially

Dismiss the Complaint (Dkt. 6).  This Court has dispensed with oral argument as it would not aid

in the decisional process.  *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).  This matter has been

fully briefed and is now ripe for disposition.  Considering the Motion together with Defendant's

Memorandum in Support (Dkt. 7), Plaintiff's Opposition Brief (Dkt. 15), and Defendant's Reply

Brief (Dkt. 16), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons

that follow.

### I.  BACKGROUND

#### A.  Factual Background[1]

Plaintiff Michele McCarty is a Black woman employed by the City of Alexandria Police

Department (the "Department").  Dkt. 1 ¶ 1.  Plaintiff has a certificate in Corrections and Law

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Enforcement and, prior to joining the Department, Plaintiff worked for the City of Alexandria's Sheriff's Office for ten (10) years in the positions of Division Chief and Commander. *Id.* ¶¶ 8-9.

Plaintiff was first employed by the Department in August 2007, and, in 2019, she became the Assistant Director of Police. *Id.* ¶ 10. On the first day of her employment, at a meeting called by Former Department Chief Michael Brown, Plaintiff learned of her co-workers' speculation that Plaintiff had only been hired due to her race, rather than based on merit. *Id.* ¶¶ 11-12. During the meeting, Chief Brown informed Department employees that he had heard the rumors and that statements that challenged Plaintiff's qualifications would not be tolerated. *Id.*

As the Assistant Director, Plaintiff was charged with working as the Bureau Chief of the Administration Services Bureau. *Id.* ¶ 13. In June 2021, Chief Brown retired, and Don Hays assumed the position of Acting Chief. *Id.* ¶ 14. Acting Chief Hayes had previously been Plaintiff's peer but was now her direct supervisor. *Id.* ¶ 15.

Despite her role as second in command of the Department, Acting Chief Hayes excluded Plaintiff from meetings. *Id.* ¶ 16. Additionally, Acting Chief Hayes did not meet with Plaintiff despite meeting one-on-one with other persons in leadership roles presumably following his transition to this new role. *Id.* ¶ 17. Acting Chief Hayes ignored Plaintiff's emails and withheld other important information from Plaintiff that she required to perform her job. *Id.* ¶ 18. After he became Chief, Chief Hayes failed to meaningfully communicate with Plaintiff in any professional capacity. *Id.* ¶ 19.

In January 2022, Plaintiff informed Chief Hayes that she felt like she was being pushed out of the Department and that she was being treated less favorably than white employees. *Id.* ¶ 20. Plaintiff requested that Chief Hayes set up a one-on-one meeting with her to discuss the direction and goals of the Department. *Id.* ¶ 21. Chief Hayes indicated that he would schedule such

meetings bi-monthly, but then never did, and did not address Plaintiff's concerns about disparate treatment.  *Id.* ¶¶ 22-23.  Chief Hayes then continued to make decisions impacting Plaintiff's position without her input.  *Id.* ¶ 24.

In 2021, Plaintiff observed Delton Goodrum, a Black male, apply for a promotion through the Department's formal promotion process.  *Id.* ¶ 26.  Chief Hayes did not select anyone for promotion through that process.  *Id.* ¶ 27.  Chief Hayes subsequently appointed Lieutenant Marcus Downey, a White male, to fill the position of Acting Captain without a formal promotion process, even though the change in role constituted a promotion.  *Id.* ¶ 28.[2]

Also in 2021, Plaintiff discussed with Chief Hayes the opening for the rotational position of Recruiter in the Department.  *Id.* ¶ 30.  Plaintiff recommended a Black, male, individual for the role and Chief Hayes agreed with the selection.  *Id.* ¶ 31.  A rumor spread that the individual selected had been chosen solely because of his race.  *Id.* ¶ 32.  That person then began to experience harassment and heightened scrutiny.  *Id.* ¶ 33.  Officer O'Leary, a white female officer, then filed a complaint alleging discrimination based on her non-selection for the position.  *Id.* ¶ 34.  Captain Gregg Ladislaw then informed Chief Hayes that the individual selected had once acted in a belligerent and insubordinate manner.  *Id.* ¶ 35.  Captain Ladislaw later admitted that this incident never occurred.  *Id.* ¶ 38.  Chief Hayes took no action against Captain Ladislaw.  *Id.* ¶ 40.  Additionally, during an investigation into Officer O'Leary's complaint, an outside law firm determined that Officer O'Leary had made some false statements.  *Id.* ¶ 42.[3]

---

[2] The Complaint does not allege that this was the same position for which Goodrum had applied.

[3] Plaintiff does not allege what the alleged false statements were or how the law firm determined that they were false, nor does Plaintiff allege the outcome of Officer O'Leary's complaint.

In March 2022, Plaintiff complained to now Deputy City Attorney Megan Roberts about alleged disparate treatment that she experienced on the basis of race. *Id.* ¶ 45. No person in the Office of the City Attorney investigated Plaintiff's concerns. *Id.* ¶ 47. On April 11, 2022, Plaintiff submitted an official complaint of discrimination. *Id.* ¶ 48. The City Attorney took no action. *Id.* ¶ 50. On April 19, 2022, Plaintiff filed a formal complaint with the City of Alexandria Human Rights Office. *Id.* ¶ 51. In May 2022, Plaintiff emailed Jean Kelleher, the Director of Alexandria's Office of Human Rights, regarding certain unidentified acts of retaliation that Plaintiff believed were due to her discrimination complaint. *Id.* ¶ 52.

On August 5, 2022, Chief Hayes informed Plaintiff that her position was being eliminated effective September 5, 2022. *Id.* ¶ 53. The City offered Plaintiff a position as Division Chief of Facility Lead and Property Management, which Plaintiff alleges was a demotion that significantly reduced her salary and would cause her to lose valuable benefits. *Id.* ¶ 54. Chief Hayes told Plaintiff that her failure to accept the lesser-paying position would result in her termination. *Id.* ¶ 55. Plaintiff later learned that her position had not been eliminated, but was changed from Assistant Director to Assistant Chief such that it could only be filled by a sworn officer. *Id.* ¶¶ 56-57. Chief Hayes appointed a white woman, who had been Plaintiff's subordinate, to the Assistant Chief position in September 2022. *Id.* ¶¶ 57.

Plaintiff accepted the role of Division Chief of Facility Lead and Property Management to preserve her employment with the Department. *Id.* ¶ 59. No other employees were demoted. *Id.* ¶ 61.

On December 6, 2022, Plaintiff filed a charge of discrimination based on race and retaliation with the Equal Employment Opportunity Commission (the "EEOC"). *Id.* ¶ 62. On January 8, 2023, Plaintiff suffered an accident that caused an oblique ankle break, and which

4

required an accommodation to avoid bearing any weight on that leg for two months. *Id.* ¶¶ 66-67. Plaintiff forwarded her accommodation request to her supervisor, Captain Shannon Soriano. *Id.* Plaintiff requested that she be permitted to telework as an accommodation. *Id.* ¶ 68. Chief Hayes responded to the request and informed Plaintiff that she could either find alternate transportation that would permit her to appear in-person or use her earned sick leave. *Id.* ¶ 69.[4] Plaintiff proceeded to use sick leave, but, when she submitted a formal accommodation request to the City, the City credited her back her leave and permitted her to use telework through September 2023. *Id.* ¶¶ 70-72.

In February 2023, Captain Soriano stepped back from her role and Chief Hayes once again became Plaintiff's supervisor. *Id.* ¶ 73. Between January 2023 and September 2023, Chief Hayes and Plaintiff had only two interactions, which occurred over Microsoft Team Meetings. *Id.* ¶ 74.

## B. Procedural Background

On April 12, 2024, Plaintiff filed her Complaint. Dkt. 1. On July 22, 2024, Defendant filed its Motion to Partially Dismiss. Dkt. 6. On August 7, 2024, Plaintiff filed her Opposition. Dkt. 15. On August 13, 2024, Defendant filed its Reply. Dkt. 16.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When

---

[4] Plaintiff does not make any allegations regarding who had the authority to sign-off on her accommodation request or suggest that it was unusual for Chief Hayes – rather than the supervisor to whom she submitted the request – to act on her accommodation request.

reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion.  *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

### III. ANALYSIS

Plaintiff's Complaint asserts three counts: (i) a race-based hostile work environment pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 12101, *et seq.*, ("Title VII"); (ii) a race-based hostile work environment pursuant to the Virginia Human Rights Act, Va. Code § 2.2-3900, *et seq.*, (the "VHRA"); and (iii) retaliation under Title VII.  Dkt. 1.  Defendant argues that Plaintiff fails to state a hostile work environment claim in Counts 1 and 2 and that Plaintiff failed to exhaust the portions of her claims related to the alleged delay in granting her accommodation request and her reliance on alleged discrimination against other employees to support her hostile work environment claim.  The Court will address each argument in turn.

#### A.    Hostile Work Environment Claims

To begin with, the Court will analyze Count 1 (Title VII hostile work environment claim) and Count 2 (VHRA hostile work environment claim) together, because Title VII and the VHRA

6

use substantially identical language.  *See, e.g.*, *Rose-Stanley v. Virginia*, 2015 WL 6756910, at *4 (W.D. Va. Nov. 5, 2015) (noting that, because plaintiff "has not stated any viable claim under federal law, she cannot claim an unlawful discriminatory practice under the VHRA").  The parties likewise analyze Counts 1 and 2 together.  Dkt. 7 at 3-4; Dkt. 15 at 3.

To state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct she experienced was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) imputable to her employer.  *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495-96 (4th Cir. 2015).  Stated differently, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).  There is no precise formula for determining whether a work environment is "abusive" or "hostile"; such a determination can be made "only by looking at all the circumstances."  *Id.* at 23.  Defendant primarily argues that Plaintiff has failed to assert facts establishing conditions so severe or pervasive as to alter the conditions of employment.  Dkt. 7 at 6-11.

Plaintiff's allegations related to her hostile work environment claim can be generally placed into three categories: (i) Chief Hayes' failure to interact with her; (ii) employment actions targeted at other persons; and (iii) the elimination of her Assistant Director position.  None of these alleged actions taken singly or in the aggregate establish a hostile work environment let alone one based on race.

To begin with, only Chief Hayes' alleged failure to interact with or include Plaintiff in the workplace is alleged to be an ongoing problem. Dkt. 1 ¶¶ 21, 74. Nonetheless, Chief Hayes' acts in this regard are neither severe nor pervasive harassment. As the Fourth Circuit has frequently noted, "complaints based on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). At best, Plaintiff's allegations in this regard are that Chief Hayes acted in a rude and petty manner. Moreover, although Plaintiff alleges that Chief Hayes' conduct "impacted" her position, Plaintiff does not allege that his alleged interference rendered her unable to do her work. Dkt. 1 ¶ 24. District judges in this District have routinely rejected claims similar to those raised by Plaintiff here. *See Reeves v. Austin*, 2024 WL 3101092, at *9 (E.D. Va. May 20, 2024) (rejecting a hostile work environment claim where plaintiff was excluded from a party, given dress code violations and poor performance reviews, etc.); *Pritchard v. Metro. Washington Airport Auth.*, 2019 WL 5698660, at *5, *11 (E.D. Va. Nov. 4, 2019) (denying retaliatory hostile work environment claim where plaintiff claimed to have been excluded from meetings). Not only are Plaintiff's allegations the kind of petty disagreements that courts have held fail to meet the severe or pervasive threshold, but her allegations are also discussed in such vague terms that it is impossible to determine whether they are slights at all.[5] Accordingly, Plaintiff's allegations regarding Chief Hayes' conduct fails to meet the severe or pervasive standard.

---

[5] Plaintiff fails to identify any particular "crucial meeting" from which she was excluded. Dkt. 1 ¶16 (failing to identify any particular meeting). Plaintiff fails to identify any documents or information allegedly withheld from her or explain how it impacted her job. *Id.* ¶ 18. Plaintiff fails to explain how Chief Hayes' decisions impacted Plaintiff's position or allege that it would be unusual for Plaintiff not to be consulted regarding such decisions. *Id.* ¶ 24. In short, notwithstanding the fact that Plaintiff's claims fail because her allegations are not severe or pervasive, such claims also fail because they are vague and conclusory. *See Buchhagen v. ICF*

Plaintiff next relies on what she views as race discrimination against others in the Department to establish her hostile work environment claim.  In this regard, Plaintiff references only two specific examples: (i) the treatment of Goodrum as opposed to Downey; and (ii) the treatment of the individual placed in the Recruiter position.  *See* Dkt. 1 ¶¶ 25-44.  At the outset, the Court addresses the parties dispute regarding whether Plaintiff can rely on the treatment of others to form her own complaint.  Although the treatment of others may inform a hostile work environment claim and may assist in demonstrating that a work environment was objectively hostile, a plaintiff must still establish that *she* suffered from a work environment that changed her terms and conditions of employment.  *See Carter v. Virginia Dep't of Game & Inland Fisheries*, 2017 WL 4413192, at *15 (E.D. Va. Sept. 29, 2017) ("Ms. Easter's contention that she observed others experiencing hostile acts does not, as alleged, plausibly assert a hostile work environment claim on her own behalf."); *see also Robinson v. Prince William-Manassas Reg'l Adult Det. Ctr.*, 2022 WL 17085916, at *3 (E.D. Va. Nov. 18, 2022).  Because Plaintiff has separately failed to establish that *she* suffered from a hostile work environment, Plaintiff cannot rely solely on others' experiences to create one.

Nor do Plaintiff's allegations suffice to demonstrate that she witnessed either Goodrum or the Recruiter suffer race-based harassment.  Plaintiff's allegations with respect to Goodrum and Downey are vague, but Plaintiff appears to allege that Goodrum applied for a position through a formal promotion process for which no one was selected for the position whereas, at a different point in time, Downey was appointed to an Acting Captain position.  Dkt. 1 ¶¶ 26-28.  Plaintiff does not allege that Goodrum applied for the position that Downey received, the relative

---

*Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (affirming dismissal of hostile work environment claim where many allegations were conclusory and "the conduct alleged [fell] far short of being severe or pervasive enough to establish an abusive environment").

qualifications of either (although the Complaint refers to one as "Mr." and the other as "Lt."), or whether it was inappropriate or unusual for Chief Hayes to appoint a person for an acting position without a formal process.  Thus, the facts as alleged do not create any inference of discrimination. With respect to the other incident, Plaintiff suggests that the Black male applicant did receive a promotion, but that rumors spread regarding the Recruiter's qualifications.  Dkt. 1 ¶ 32.  Plaintiff's allegations regarding the nature and extent of such rumors are vague and conclusory and, thus, would not support a hostile work environment claim even if such rumors were directed at her rather than the Recruiter.  *See Heyward v. Careteam Plus, Inc.*, 2021 WL 7278775, at *4-*5 (D.S.C. Sept. 30, 2021) (dismissing hostile work environment claim based on rumors).  With respect to the other allegations regarding the Recruiter, Plaintiff suggests that another person's filing of a race-based discrimination claim establishes a hostile work environment.  Not so.  *See Abreu v. N. Am. Partners in Anesthesia, LLP*, 2023 WL 5959430, at *12 (E.D. Va. Sept. 12, 2023) (collecting cases) (holding that other employees' unfounded claims of discrimination cannot themselves establish a hostile work environment).  Moreover, Plaintiff cannot demonstrate a hostile work environment where the claims that she alleges to be false were indeed investigated and determined to be false; indeed, such a result seems consistent with, rather than a violation of, Title VII.  To the extent Plaintiff suggests that Chief Hayes should have disciplined O'Leary or Ladislaw, there are insufficient allegations to suggest that those decisions constitute discrimination.  With respect to O'Leary, Plaintiff has failed to allege what false statement O'Leary actually made; moreover, it is difficult to see how the Department could discipline O'Leary without opening itself up to a retaliation claim.  Accordingly, even assuming that Plaintiff can premise her hostile work environment claim on harassment experienced by others, Plaintiff has failed to demonstrate that the two incidents to which she refers would qualify as discrimination or race-based harassment.

Plaintiff also argues that her demotion satisfies the severe or pervasive element of her hostile work environment claim.  Here again, Plaintiff's argument fails.  Plaintiff asserts that, in August 2022, she was demoted, and her pay was reduced, although Plaintiff does not provide any details regarding the scope of any change in salary, benefits, or responsibilities.  Dkt. 1 ¶¶ 54, 82. The Fourth Circuit has held that, even where such actions are "racially tinged," a demotion is not sufficiently severe or pervasive to "create an abusive environment."  *Ali v. FC Architects Eng'rs, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020).   District courts within this Circuit have likewise recognized that a single act of disparate treatment – like the demotion alleged here – is not sufficient to establish the severe or pervasive element of a hostile work environment claim.  *See, e.g.*, *Petrosyan v. Delfin Grp. USA LLC*, 2014 WL 5488419, at *6 (D.S.C. Oct. 29, 2014) ("While Plaintiff does set forth some specific factual allegations that Gordon demoted him and replaced him with a less experienced employee, that even is not 'extreme' conduct sufficient to establish the requisite severe and abusive conduct required for a hostile work environment.").  Accordingly, Plaintiff has also failed to establish the severe or pervasive element in reliance on her demotion.

Perhaps acknowledging that separately none of her allegations are severe or pervasive, Plaintiff argues that her allegations, in their totality, are sufficiently severe or pervasive to demonstrate a hostile work environment.  Dkt. 15 at 4.[6]  Plaintiff has only pled three circumstances that could be considered more than conclusory allegations:[7] (i) the comparison between the

---

[6] It is worth noting that Plaintiff herself failed to analyze the severity or pervasiveness of any of the acts upon which she relies other than to conclusorily argue that the combination of such acts satisfies the severe or pervasive hurdle.  Dkt. 15 at 4-7.  Indeed, Plaintiff does not even indicate whether she is relying on the alleged severity of such acts, the alleged pervasiveness of such acts, or both.

[7] Plaintiff's allegations with respect to the rumors spread about the Recruiter are vague and conclusory as there is no timeframe, no suggestion as to who made such rumors, whether any

promotions process for Goodrum versus Downey; (ii) the investigation of O'Leary's reverse discrimination complaint and failure to discipline O'Leary or Ladislaw; and (iii) her own demotion.  Although Plaintiff has not alleged precise timeframes, these three alleged incidents appear to have occurred over a two-year period (early 2021 through the end of 2022).  The Fourth Circuit recognizes that where there are a "few" incidents over a years-long period, a Plaintiff fails to establish the pervasiveness of such conduct.  *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 210 (4th Cir. 2019) (discussing alleged harassment over a period of time and holding that "this conduct is too remote to be pervasive"); *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 408-09 (4th Cir. 2022) (recognizing that "large temporal gaps between allegations undermine a hostile-work-environment claim" and suggest "occasional problems, not pervasive ones").  Moreover, Plaintiff does not argue, and the factual allegations do not support, that any of the conduct on which she relies are sufficiently severe to establish a hostile work environment, as the actions were mostly based on discrete promotion decisions and not any physical threats, race-based name calling, or other overtly humiliating actions.  *See, e.g., Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (holding that plaintiff could not establish a hostile work environment because, although her treatment was often "disrespectful, frustrating, critical, and unpleasant," it did not establish treatment that was "physically threatening, humiliating, or otherwise sufficiently severe to create a hostile work environment").  Thus, even analyzing Plaintiff's claims together, Plaintiff has failed to establish that any of her allegations were sufficiently severe or pervasive to plausibly assert a hostile work environment claim.

---

actions were taken to address the rumors, how the rumors were spread, or the specific content of the rumors.

Even assuming *arguendo* that Plaintiff has alleged circumstances that are severe or pervasive, none of Plaintiff's factual allegations plausibly assert that the acts of which she complains were based on her race.  Indeed, based on the factual allegations presented it is just as possible that the conduct of which she complains is based on the fact that she is a woman or the fact that she was apparently not a sworn police officer.  Dkt. 1 ¶¶ 53-57 (alleging that her Assistant Director position had been converted to an Assistant Chief position "such that it could be filled by a sworn officer only").  Indeed, it is unclear why Plaintiff believes that race was the motivating factor for any of the decisions of which she complains.

Chief Hayes was apparently the decision-maker for each of the decisions of which she complains.  Yet, any inference of racial animus on his behalf is undermined by the fact that Chief Hayes promoted the Recruiter – a Black man – on Plaintiff's recommendation.  Dkt. 1 ¶ 31.  Plaintiff's Complaint does not allege that Chief Hayes has ever used racial language.  The only two allegations directly relating to race are the two vague allegations relating to rumors: (i) first, the allegation that there were rumors regarding Plaintiff's qualifications in 2007 which were promptly shut down by former Chief Brown; and (ii) second, the allegation that there were rumors regarding the Recruiter's qualifications in 2021.  *Id.* ¶¶ 11-12, 32.  The Complaint does not allege that Chief Hayes had any involvement with, or indeed any knowledge of, either set of rumors.  As district judges in this District have recognized, allegations of race-discrimination like those asserted by Plaintiff rest on speculation as to the motives underlying the conduct of which she complains.  *See, e.g.*, *Staley v. Gruenberg*, 2013 WL 12096490, at *13 (E.D. Va. May 10, 2013) (finding that "Plaintiff merely speculates with boilerplate allegations that Defendant's conduct resulted from its animus toward a protected group"); *Hector v. Wolf*, 2020 WL 7265848, at *7-8 (E.D. Va. Dec. 10, 2020) (dismissing hostile work environment claim where there "are no

supporting allegations demonstrating that plaintiff's perception was reasonable, why plaintiff perceived [a] comment this way," *etc*.).  There are thus no factual allegations which move Plaintiff's assertions of race discrimination from *possible to plausible.  See Burnette v. Fahey*, 687 F.3d 171, 186 (4th Cir. 2012) (noting that the *Iqbal* and *Twombly* pleading standard requires plaintiff's to "allege facts demonstrating a plausible, not merely possible, entitlement to relief"). Accordingly, Plaintiff's hostile work environment claim also fails on this ground.

In sum, the Court will grant Defendant's Motion with respect to the hostile work environment claim because Plaintiff has failed to allege facts which satisfy the severe or pervasive element of her claim, or which demonstrate that any of the conduct of which she complains is related to race.  Given that it is not clear that amendment of the hostile work environment claim would be futile, the Court will provide Plaintiff with one opportunity to amend her Complaint to assert additional factual allegations.

### B.    Failure to Exhaust

Defendant also argues that Plaintiff has failed to exhaust her administrative remedies with respect to: (i) her claim that Chief Hayes delayed the granting of her accommodation request; and (ii) her claim that alleged discrimination against other people supports her hostile work environment claim.   Plaintiff alleges that Chief Hayes' actions in originally denying her accommodation request was part of continued retaliation by Chief Hayes.  Dkt. 1 at 9.[8]  As

---

[8] The Court notes that, with respect to her retaliation claim, it is not clear from the Complaint that Chief Hayes knew of Plaintiff's protected activities in 2022 or that Chief Hayes was the decision-maker responsible for her demotion.  *See Roberts v. Glenn Industrial Grp., Inc.*, 998 F.3d 111, 125 (4th Cir. 2021) ("[W]e conclude that Fourth Circuit precedent addressing the causation prong of a *prima facie* case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity."). Any amended complaint filed by Plaintiff should clarify any such allegations.

discussed *supra*, the allegations regarding discrimination against other people were alleged in support of Plaintiff's hostile work environment claims.

Here, the alleged retaliatory denial of a reasonable accommodation request occurred in January 2023 – the month after Plaintiff filed her EEOC Charge.  As Defendant acknowledges, Plaintiff may rely on allegations "reasonably related to the original complaint."  *Evans v. Techs. Application & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).  Defendant's argument would hold force, if Plaintiff sought to bring a claim under the Americans with Disabilities Act based on the alleged failure to accommodate, but here Plaintiff has alleged that the denial of an accommodation was part of an ongoing denial of benefits by Chief Hayes.  *See Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018) ("[R]etaliation claims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge.").  Moreover, although the denial of an accommodation is not usually pled as a retaliation claim, courts have recognized that it can be.  *See, e.g.*, *Solomon v. Vilsack*, 628 F.3d 555, 567 (D.C. Cir. 2010) (reversing district court determination that plaintiff could not state a Title VII retaliation claim based upon the denial of a request for a reasonable accommodation).  Accordingly, the Court will deny Defendant's Motion to the extent that it argues that Plaintiff has failed to exhaust her administrative remedies with respect to her retaliation claim based on Chief Hayes' denial of her accommodation request in Count 3.

Defendant also argues that Plaintiff has failed to exhaust her claim that she was subjected to a hostile work environment based on discrimination against other people. Dkt. 7 at 13.  Defendant's argument fares better here.  Although "[a] hostile work environment claim is

composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002), that does not relieve a Plaintiff of her obligation to administratively exhaust or permit Plaintiff to make her administrative allegations so broad as to render the exhaustion requirement a nullity, *Chacko v. Patuxent Inst.*, 429 F.3d 505, 512 (4th Cir. 2005). Here, Plaintiff's administrative charge asserts: "In or around June 2021, Chief Hayes was temporary [sic] assigned as the Acting Chief, I was subjected to [a] hostile work environment such as not being included in meetings or discuss [sic] information about the department with me." Dkt. 7-1.[9] Although a Plaintiff need not exhaust *every* aspect of her hostile work environment claim, the administrative charge must still bear some resemblance to the allegations in the Complaint. In *Chacko*, the Fourth Circuit held that certain claims of harassment based on coworker harassment and national origin epithets were not exhausted where the administrative charge referred to three specific incidents. 429 F.3d at 511. In particular, the Fourth Circuit noted that the administrative charged relied solely on claims of supervisor harassment whereas in her Complaint and at trial the Plaintiff relied primarily on claims of coworker harassment. *Id.* Likewise, here, the administrative charge relies primarily on claims of harassment directed *towards Plaintiff* whereas the Complaint relies on discrimination experienced by *other people*. *Compare* Dkt. 1 *with* Dkt. 7-1. The EEOC Charge does not mention any claims of harassment against other people as support for Plaintiff's hostile work environment claim and it is unlikely that any EEOC investigation would have looked beyond Plaintiff's allegations of discrimination against herself. *See Chacko*, 429 F.3d at 512 ("Here, however, a reasonable investigation of discrete incidences of supervisor misconduct not involving name

---

[9] The Court may consider the EEOC Charge on the motion to dismiss because it is referenced in the Complaint.

calling could not be expected to lead to a continuous pattern of nonsupervisory misconduct which did involve name calling.")  Thus, this case involves the "shifting sets and a rotating case of characters that would have deprived her [] employer of notice of the allegations against it." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 595 (4th Cir. 2012) (citing *Chacko*, 429 F.3d at 511). Accordingly, the Court will grant Defendant's Motion to the extent it asserts that Plaintiff failed to exhaust the portions of Counts 1 and 2 that rely on discrimination against coworkers to support her claims of a hostile work environment.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED Defendant's Motion to Dismiss (Dkt. 6) is GRANTED IN PART and DENIED IN PART.  The motion is granted insofar as the claims of a hostile work environment are dismissed.  The motion is denied insofar as it seeks dismissal of part of the retaliation claim; and it is

FURTHER ORDERED that Counts 1 and 2 are DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff may file any Amended Complaint within FOURTEEN (14) DAYS of the entry of this Memorandum Opinion and Order.  If Plaintiff fails to file an Amended Complaint by that date, the Court will assume that Plaintiff is proceeding only on Count 3 and will issue a scheduling order.

It is SO ORDERED.

Alexandria, Virginia
December 11, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge