IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHELE MCCARTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-600 (RDA/IDD) |
| ) | |
| CITY OF ALEXANDRIA, a municipal ) | |
| Corporation of Virginia, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant City of Alexandria's Motion to Partially Dismiss the Amended Complaint (Dkt. 19). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Plaintiff's Amended Complaint (Dkt. 18), Defendant's Memorandum in Support (Dkt. 20), Plaintiff's Opposition Brief (Dkt. 25), and Defendant's Reply Brief (Dkt. 26), this Court GRANTS the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Michele McCarty is a Black woman employed by the City of Alexandria Police Department (the "Department"). Dkt. 18 ¶¶ 1, 10. Plaintiff was first employed by the Department in August 2007. *Id.* ¶ 10. In October 2019, Plaintiff became the Department's Assistant Director

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

of Police. *Id.* ¶ 10. As the Assistant Director, Plaintiff was second in command within the Department. *Id.* ¶ 19.[2]

On her first day as Assistant Director, Plaintiff learned of speculation that she had been hired only because of her race. *Id.* ¶ 11. The Department Chief at the time, Michael Brown ("former Chief Brown"), learned of the speculation, and informed employees that statements challenging Plaintiff's qualifications would not be tolerated. *Id.* ¶ 13. Former Chief Brown retired around June 2021. *Id.* ¶ 15. Upon his retirement, Don Hayes ("Chief Hayes") became acting Chief and Plaintiff's direct supervisor. *Id.* ¶¶ 15-16. Chief Hayes is also a person of color. *Id.* ¶ 75.

Despite Plaintiff's position as Assistant Director, Chief Hayes failed to communicate with Plaintiff. *Id.* ¶ 22. Additionally, Plaintiff asserts that Chief Hayes: (i) failed to provide information to Plaintiff necessary for her to perform her duties; (ii) excluded her from departmental meetings; (iii) failed to meet with her one-on-one; and (iv) failed to respond to her emails and phone calls. *Id.* ¶¶ 19-21. Plaintiff asserts that no non-Black individual received the same treatment from Chief Hayes. *Id.* ¶ 23. Plaintiff does not allege her basis for knowing Chief Hayes' email, phone, or meeting habits with other members of the Department.

In January 2022, Plaintiff informed Chief Hayes that she felt like she was being pushed out of the Department and was being treated less favorably than white employees. *Id.* ¶ 24. Plaintiff also asked to meet with Chief Hayes one-on-one to discuss the goals of the Department. *Id.* ¶ 25. Chief Hayes did not address Plaintiff's concerns about the alleged disparate treatment based on

---

[2] Although Plaintiff does not explicitly allege it, it is clear from the allegations of the Amended Complaint that Plaintiff is not a sworn officer. Plaintiff asserts that she was told that she was removed from her position, because her position could only be filled by a sworn officer, implying that she is not one.

race. *Id.* ¶ 27. Chief Hayes also did not grant Plaintiff a one-on-one meeting; instead, Chief Hayes informed Plaintiff that he would begin to schedule bi-monthly meetings between himself, Plaintiff, and Acting Assistant Chief Andreas.[3] *Id.* ¶ 26. Plaintiff alleges that those meetings also never occurred. *Id.* ¶ 27. According to Plaintiff, Chief Hayes continued to make decisions impacting Plaintiff's position without her input. *Id.* ¶ 28. For example, Chief Hayes moved individuals out of the Bureau that Plaintiff managed. *Id.* Chief Hayes also failed to hold "expectation meetings" with Plaintiff while he did so with other, white members of the Department leadership. *Id.* ¶ 29. Plaintiff asserts that this led to her not receiving insight into the Department's direction, vision, or goals. *Id.* ¶¶ 29-31. Despite Plaintiff's lack of information and communication received from Chief Hayes, Plaintiff performed at the same high level as she had performed under former Chief Brown. *Id.* ¶ 36. Plaintiff alleges that Chief Hayes' actions created feelings of exclusion among her Black colleagues and notes that, during a Department meeting, all people of color present sat silently against the wall apart from their white colleagues to protest their treatment by the Department. *Id.* ¶¶ 33-34.

Plaintiff also alleges that Chief Hayes ignored the promotional policies of the Department on more than one occasion. *Id.* ¶ 38. Specifically, Plaintiff alleges that Chief Hayes based his promotional decisions on subjective, unwritten criteria in a manner that led to the exclusion of qualified candidates of color and the promotion of white candidates who scored lower during the promotional process. *Id.* ¶ 39. Plaintiff alleges Chief Hayes ignored Department policies during two promotional processes in 2022, one for Captain and one for Sergeant. *Id.* ¶¶ 44, 52.

For the Captain promotion, the Department conducted an assessment of internal candidates beginning in or around October 2020. *Id.* ¶ 44. The only black applicant, Lt. Goodrum, ranked

---

[3] Plaintiff does not provide a first name for the Acting Assistant Chief.

third among the candidates on the eligibility list who participated in the assessment. *Id.* ¶¶ 45-46. Plaintiff alleges Chief Hayes rejected and ignored those assessment scores (which were at that point more than a year old) for the Captain promotion and in 2022 selected two white candidates Courtney Ballantine and Jerry Newcomb. *Id.* ¶¶ 47-48. Plaintiff asserts that neither Ballantine nor Newcomb was interviewed by Chief Hayes, and Newcomb ranked lower than Lt. Goodrum during a review of their qualifications. *Id.* ¶¶ 49-50.

For the Sergeant promotion, the Department conducted an assessment of internal candidates for promotion to the role beginning in or around October 2020, resulting in creation of a list of eligible candidates, ranked by score, in or around December 2020. *Id.* ¶ 52. Plaintiff alleges that in June 2022, Chief Hayes ignored the eligible candidates assessment scores from more than a year earlier. *Id.* ¶ 53. Plaintiff asserts that Chief Hayes skipped over a candidate of color to select a white female officer for the position of Sergeant. *Id.* ¶ 54. Plaintiff alleges Chief Hayes relied only on his own discretion to promote lesser qualified white individuals to sworn positions within the Department. *Id.* ¶ 55.

On or about March 4, 2022, Plaintiff complained to Deputy City Attorney Meghan Roberts about the disparate treatment based on her race. *Id.* ¶ 56. Plaintiff's complaint was reported to the City Manager, but Plaintiff believes no action was taken to remedy her concerns. *Id.* ¶¶ 57-58. On April 11, 2022, Plaintiff submitted an official complaint of discrimination to the City's Ethics and Fraud Hotline. *Id.* ¶ 59. Both of Plaintiff's complaints expressed concern about losing her position to a white individual more favored by Chief Hayes. *Id.* ¶ 56-60. On or about April 19, 2022, Plaintiff filed a formal complaint of discrimination with the City's Office of Human Rights. *Id.* ¶ 61.

In July 2022, Chief Hayes conducted Plaintiff's performance evaluation. *Id.* ¶ 63. Chief Hayes ranked Plaintiff's performance as "exceptional" in all categories in which she was evaluated. *Id.*

On or about August 5, 2022, Plaintiff was informed by Chief Hayes that her position was being eliminated effective September 5, 2022. *Id.* ¶ 64. Plaintiff alleges this was not true; that the position remained but the *title* changed (from Assistant Director to Assistant Chief) so that it could now be filled only by a sworn officer. *Id.* ¶¶ 69-70. The new Assistant Chief was a white female who had directly reported to Plaintiff for the previous two years. *Id.* ¶¶ 70-71. Plaintiff was then offered the position of Division Chief of Facility Lead and Property Management, a demotion that reduced her salary, benefits, and opportunity to earn future merit increases. *Id.* ¶¶ 65-66. Chief Hayes told Plaintiff that failure to accept this position would result in her termination from the Department. *Id.* ¶ 68. Plaintiff accepted the position and continues to work there as of December 27, 2024. *Id.* ¶¶ 72-73. No white Bureau Chiefs were demoted based on any organizational changes. *Id.* ¶ 74.[4] Chief Hayes provided access to information to Plaintiff's white successor that he did not provide to Plaintiff. *Id.* ¶ 76.

B. Procedural Background

On April 12, 2024, Plaintiff filed her Complaint. Dkt. 1 (the "Original Complaint"). On July 22, 2024, Defendant filed its Motion to partially dismiss. Dkt. 6. On August 7, 2024, Plaintiff filed her opposition. Dkt. 15. On August 13, 2024, Defendant filed its reply. Dkt 16. On December 11, 2024, the Court granted in part and denied in part Defendant's first motion to dismiss. Dkt. 17. That motion was granted with respect to Plaintiff's hostile work environment

---

[4] Plaintiff does not allege that there were other Bureau Chiefs that were also not sworn officers.

claims but denied with respect to her retaliation claim. *Id.* at 17. The Court permitted Plaintiff to amend her hostile work environment claims. *Id.*

On December 27, 2024, Plaintiff filed her Amended Complaint. Dkt. 18. On January 10, 2025, Defendant filed its pending Motion to Partially Dismiss seeking only to dismiss the re-alleged hostile work environment claims. Dkt 19. On February 3, 2025, Plaintiff filed her Opposition. Dkt. 25. On February 10, 2025, Defendant filed its Reply. Dkt. 26.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 570 (2007). A claim is facially plausible "when the plaintiff pleaded a factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

III. ANALYSIS

Under Title VII of the Civil Rights Act of 1964 ("Title VII"),[5] to state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct she experienced was: (1) unwelcome; (2) based on a protected characteristic (here, race); (3) sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) imputable to her employer. *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495-96 (4th Cir. 2015). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). Courts must determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). There is no precise formula for determining whether a work environment is "abusive" or "hostile"; such a determination can be made "only by looking at all the circumstances." *Harris*, 510 U.S. at 23.

In the prior Memorandum Opinion, the Court dismissed Plaintiff's hostile work environment claims because: "Plaintiff has failed to allege facts which satisfy the severe or pervasive element of her claim, or which demonstrate that any of the conduct of which she complains is related to race." Dkt. 17 at 14. Defendant argues that Plaintiff's Amended Complaint has failed to cure these defects. Dkt. 20 at 7-10. As was the case with Plaintiff's Original Complaint, Plaintiff's allegations in her Amended Complaint "can be generally placed into three

---

[5] As the Court previously held, the analysis with respect to Title VII and the Virginia Human Rights Act, Va. Code § 2.2-3900, *et seq.* (the "VHRA"), is the same. Dkt. 17 at 6-7. Accordingly, the Court will analyze Counts 1 and 2 together.

categories: (i) Chief Hayes' failure to interact with her; (ii) employment actions targeted at other persons; and (iii) the elimination of her Assistant Director position." Dkt. 17 at 7. And as with Plaintiff's Original Complaint, "[n]one of these alleged actions taken singly or in the aggregate establish a hostile work environment let alone one based on race." *Id.*

### A. The Alleged Failure to Communicate/Interact

The Amended Complaint does not plausibly allege that Chief Hayes' failure to interact with Plaintiff caused a severe or pervasive hostile work environment. To begin with, although Plaintiff alleges in conclusory fashion that she was excluded from meetings, there are no allegations in the Amended Complaint regarding the frequency with which Chief Hayes would conduct meetings from which she was excluded.

Courts look to the frequency of the behavior in measuring the severity or pervasiveness of a hostile work environment. *See Edwards v. Murphy Brown, L.L.C.*, 760 F. Supp. 2d 607, 628 (E.D. Va. 2011). Typically, successful hostile work environment claims "often involve repeated conduct." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (internal citations omitted). "The more frequent the harassment, the more likely a Title VII violation has occurred." *Edwards*, 760 Supp. 2d at 628. Here, Plaintiff has not alleged any *facts* regarding any specific incidents that could be constitute sex-based hostility. Although Plaintiff alleges that she was excluded from meetings, the time period of the Amended Complaint covers approximately a year and a half and there are no allegations regarding the frequency with which meetings were held, how invitations were extended, the relative importance of any meeting, or with whom those meetings took place. Dkt. 18 ¶ 19. Plaintiff merely alleges in conclusory fashion that she was excluded from meetings. Thus, Court cannot ascertain the frequency of Chief Hayes' alleged conduct to evaluate its severity or pervasiveness.

Plaintiff also alleges that Chief Hayes' failure to interact with her resulted in her failing to receive critical information to perform her duties. Dkt. 18 ¶ 22. Once again, this allegation is vague; the Amended Complaint does not detail what "critical information" was withheld from Plaintiff to perform her duties. *Skipper v. Giant Food Inc.*, 68. Fed. App'x. 393, 399 (4th Cir. 2003) ("[A] plaintiff pressing a hostile work environment claim must substantiate [her] claim with reasonable specifics about the alleged incidents that underlie the claim."). Indeed, it appears from the allegations of Plaintiff's Amended Complaint that such information was not critical; Plaintiff alleges that she "performed her job at the same high level that she had achieved under Chief Brown's tenure" and that Chief Hayes recognized that effort by ranking her as "exceptional." Dkt. 18 ¶¶ 36, 63.

Plaintiff further alleges that Chief Hayes treatment of her "created an environment where others in high-ranking positions in the Department similarly excluded her, ignored her, and deprived her of the decision-making ability attendant to her position." *Id.* ¶ 5. However, behavior that is "callous . . . by . . . superiors" does not "describe the type of severe or pervasive" activity necessary to state a hostile work environment claim. *Bass v. E.I. DuPont de Nemours*, 324 F.3d 761, 765 (4th Cir. 2003). Thus, without more, Plaintiff cannot prevail on Chief Hayes' alleged lack of responsiveness to Plaintiff's individual concerns. As for others in the Department, receiving "rude treatment" by coworkers, *Perkins*, 936 F.3d at 208, or dealing with "colleagues who give the cold shoulder," while "unfair and hurtful, do not implicate Title VII." *Roesinger v. Pohanka of Salisbury, Inc.*, 2024 WL 701776 at *4 (4th Cir. Feb. 21, 2024) (internal citations omitted); *see Pritchard v. Metro Washington Auth.*, 2019 WL 5698660, at *5, *11 (E.D. Va. Nov. 4., 2019) (denying retaliatory hostile work environment claim where plaintiff claimed to have been excluded from meetings). As courts have frequently commented in the context of Title VII

complaints, courts do not sit as a "super-personnel department." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 206 (4th Cir. 2016).

At bottom, even affording Plaintiff the inferences warranted at the Motion to Dismiss stage, "[p]laintiff's allegations are, at most grievances about 'the management style or decisions of those who supervised' her, which are not actionable under Title VII." *Wooten v. Univ. of Md., Balt.*, 733 F. Supp. 3d. 402, 428 (D. Md. 2024) (quoting *Thorn v Sebelius*, 766 F. Supp. 2d 585, 601 (D. Md. 2011)). By Plaintiff's own account, Chief Hayes' failure to interact with her did not prevent her from performing her job at a high level or earning positive performance evaluations from him. Dkt. 18 ¶¶ 36, 63. As this Court has previously stated, "[n]ot only are Plaintiff's allegations the kind of petty disagreements that courts have held fail to meet the severe or pervasive threshold, but her allegations are also discussed in such vague terms that it is impossible to determine whether they are slights at all." Dkt. 17 at 8. It remains true that Plaintiff's vague and conclusory allegations regarding Chief Hayes' conduct fail to meet the severe or pervasive threshold.

### B. Employment Actions Targeted At Other People

Plaintiff's Amended Complaint also again details employment actions targeted at other persons, particularly promotional decisions by Chief Hayes. Dkt. 18 ¶¶ 48-49. Plaintiff's Opposition states that "[f]ormal complaints of race-based discrimination brought against Hayes by several of Ms. McCarty's black colleagues between April 2022 and September 2023 also became known to her." Dkt. 25 at 9. Although treatment of others may inform a hostile work environment claim and may assist in demonstrating that a work environment was objectively hostile, a plaintiff must still establish that *she* suffered from a work environment that changed her terms and conditions of employment. Dkt. 17 at 9; *see Carter v. Virginia Dep't of Game & Inland Fisheries*, 2017 WL 17085916, at *3 (E.D. Va. Nov. 18, 2022). The objectively hostile analysis may include

but is not limited to the "frequency of the discriminatory conduct," "its severity," and "whether it unreasonably interferes with an employee's work performance." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 409 (4th Cir. 2022). As discussed *supra*, Plaintiff's allegations in this regard have failed to establish severe or pervasive conduct with respect to her.

Moreover, from the face of the Amended Complaint, while arguably there is suspicious behavior on the part of Chief Hayes, there are very few facts from which the Court can evaluate the allegations with respect to the three individuals who complained about discrimination within the Department. Dkt. 18 ¶¶ 82-85. All that is ostensibly clear is that the three individuals made complaints. *Id.* There is, however, no allegation that their complaints were meritorious. Indeed, there are no allegations in the Amended Complaint regarding Ms. Sutton, Ms. Turner, or Ms. Warren such that the Court could evaluate whether any actions with respect to those individuals support Plaintiff's claims. With respect to Mr. Goodrum, Plaintiff alleges that he felt that he was overlooked for a promotion based on race, but most of her allegations rest on the fact that Chief Hayes, making a decision in 2022, did not rely on evaluations conducted in 2020, before he even became Chief. To the extent, this single example reveals any race-based animus, the connection is tenuous and does not establish pervasive race-based hostility. Thus, Plaintiff has failed to demonstrate that the incidents to which she refers would qualify as discrimination or race-based harassment or support her own claim of a hostile work environment. Dkt. 17 at 10.

C. Plaintiff's Alleged Demotion

Plaintiff also argues that her demotion from Assistant Director to Division Chief of Facility Lead and Property Management satisfies the severe or pervasive element of her hostile work environment claim. Dkt. 18 ¶¶ 65-66. But Plaintiff has failed to plead facts that the new requirement of the Assistant Chief position was borne out of discriminatory intent against Plaintiff.

Plaintiff alleges that the Assistant Director position was changed to include a sworn officer requirement to be eligible for the role, which Plaintiff was not. Dkt. 18 ¶ 69. But Plaintiff fails to allege that Chief Hayes was the decision-maker with respect to that demotion and, instead, merely alleges that Chief Hayes "told" Plaintiff of the decision. *Id.* Indeed, the Amended Complaint instead refers to "the City's demotion" and "The City" as offering the Division Chief of Facility Lead and Property Management role to Plaintiff. *Id.* ¶¶ 65, 67. Thus, Plaintiff's allegations as they stand, do not support that her demotion was based on race, because she does not allege that the only allegedly discriminatory supervisor was the one to make the decision to demote her.

Additionally, Plaintiff alleges "No white Bureau Chiefs were demoted or suffered a reduction in salary based on any organizational changes made by Hayes during [Plaintiff's] employment with the Department." Dkt. 18 ¶ 74. But Plaintiff does not allege that any of those "white Bureau Chiefs" were similarly situated to Plaintiff, because she does not allege that any of them were not sworn officers. Again, under the applicable analytical standard, this does not plausibly allege *Plaintiff* was treated less favorably based on a protected characteristic. *See Tinsley v. City of Charlotte*, 854 F. App'x 495, 501 (4th Cir. 2021) (where a plaintiff relies on similarly situated persons being treated differently, the plaintiff must show that the "comparator [was] similarly situated in all material respects").

Importantly, as this Court has previously stated, "District Court's within this Circuit have likewise recognized that a single act of disparate treatment – like the demotion alleged here – is not sufficient to establish a severe of pervasive element of a hostile work environment claim." Dkt. 17 at 11; *see, e.g., Petrosyan v. Delfin Grp. USA LLC*, 2014 WL 5488419, at *6 (D.S.C. Oct. 29, 2014) ("While Plaintiff does set forth some specific factual allegations that Gordon demoted him and replaced him with a less experienced employee, that even is not 'extreme conduct

sufficient to establish the requisite severe and abusive conduct required for a hostile work environment."). The demotion alone does not plausibly allege a hostile work environment and, for the reasons discussed *supra*, it all does not support or render plausible Plaintiff's other allegations of a hostile work environment. Thus, this single alleged act of disparate treatment by Chief Hayes towards Plaintiff is not enough to tip the scales in Plaintiff's favor to establish the severe or pervasive element of a hostile work environment claim.

### D. Plaintiff's Race-Based Allegations

Finally, the essence of Plaintiff's race-based hostile work environment claim is that she was generally treated less favorably than her white co-workers, could not access Chief Hayes, and that her colleagues excluded, ignored, and deprived her of decision-making ability attendant to her position. Dkt. 18 ¶¶ 98-103. But "[o]nly harassment that occurs 'because of' an individual's protected status can be used to support a hostile work environment claim." *Carroll v. Amazon Data Servs., Inc.*, 2022 WL 3161895, at *4 (E.D. Va. Aug. 8, 2022) (quoting *Hartsell v. Duplex Prod, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997)). "[I]it is well-settled that a 'hostile work environment claim fails' when it is 'based on professional frustrations, not personal . . . attacks [based on a protected status].'" *Desai v. DeJoy*, 2024 WL 3092403, at *8 (E.D. Va. June 20, 2024) (quoting *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 191 (4th Cir. 2004)). Here, Plaintiff allegations do not plausibly connect her allegations of hostile conduct to her race.

Plaintiff's allegations that she was shut out from Chief Hayes and her coworkers are akin to those that have been previously rejected by courts. For example, the Second Circuit, in *Fleming v. MaxMara USA, Inc.*, found that a plaintiff's allegations, which included that defendants had "wrongly excluded [plaintiff] from meetings" and "refused to answer [plaintiff's] work-related questions," did "not support a finding of a hostile work environment that is pervasive or severe"

based on race. 371 Fed App'x 115, 119 (2d. Cir. 2010) (internal citations omitted). In *Daugherty v. Food Lion, LLC*, a district court judge in this Circuit similarly found that a plaintiff's allegations that his supervisor would ignore him and refuse to make eye contact with him failed to establish a race-based hostile work environment. 2006 WL 1642233, at *13 (W.D.N.C. June 13, 2006). So too here. Plaintiff has alleged she has been excluded from meetings and been ignored by colleagues, but the only thing that appears to connect those acts to Plaintiff's race is Plaintiff's own speculation. Because this is not enough to plausibly allege actions taken towards her were based on her protected status, Plaintiff's race-based hostile work environment will be dismissed for failure to state a claim.

*   *   *

In sum, taking Plaintiff's allegations either singly or together, Plaintiff fails to plausibly allege that Chief Hayes' conduct (while obviously professionally frustrating to Plaintiff) was so severe or pervasive that it constituted a hostile work environment. Accordingly, the Court will grant the Motion in this regard. Plaintiff, who is represented by counsel, has now had two opportunities to attempt to state a hostile work environment claim and has failed to do so. Accordingly, it appears futile to permit further amendment and the Court will dismiss Counts 1 and 2 with prejudice.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED Defendant's Motion to Partially Dismiss (Dkt. 19) is GRANTED; and it is

FURTHER ORDERED that the Counts I and II of the Amended Complaint (Dkt. 18) are DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that the parties are advised that a scheduling order will issue promptly.

It is SO ORDERED.

Alexandria, Virginia
July 9, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge